## STATE v. WILLIAM V. FAGERSTROM.

151 N. W. (2d) 251.

May 19, 1967—No. 40,322.

*Lehan J. Ryan*, for appellant.

---

[1] See, Advisory Committee Comment, 40 M. S. A. pp. 99 to 102.

*Douglas M. Head,* Attorney General, *Gerard Snell,* Solicitor General, *William B. Randall,* County Attorney, and *Thomas M. Quayle,* Assistant County Attorney, for respondent.

PER CURIAM.

This is an appeal from a judgment of conviction and from an order of the district court denying defendant the right to withdraw his plea of guilty to an information charging him with attempted aggravated robbery.

At his arraignment on October 22, 1965, defendant submitted to the court a letter which included among other things the following request:

"I, William Virgil Fagerstrom, defendant, am hereby requesting the dismissal of the Public Defender (s) representing my case on the grounds of inadequate counselling inasmuch as hostility towards the defendant, *based on defendant's refusal to plead guilty to his alleged charges that are now pending* and to the effect of the Public Defender's refusal to investigate possible witnesses and to the actions and whereabouts of defendant at the time of alleged crimes." (Italics supplied.)

The trial court thereupon relieved of further responsibility the two public defenders then representing defendant and appointed a third public defender, Marvin Green. The arraignment was continued to October 26, 1965.

On the date of the continued hearing defendant was arraigned on the count of attempted robbery and pled guilty. The defendant was sworn and a presentence interrogation conducted. As a part of the examination defendant made the following statements to the court:

"Q. [By the assistant county attorney] Okay. Now, the public defender has been assigned to represent you in this case, and Mr. Green here is present with you in Court today, is that correct?
"A. Yes.
"Q. I take it you've talked this matter over with him prior to coming to Court today, is that correct?
"A. Yes.
"Q. Now, you pleaded guilty to the crime of Attempted Robbery, which means that you attempted to take some money from another person by means of displaying some force, but that you were unsuccessful in actually getting the money, money which you knew did not belong to you but belonged to the next person that you were going to take it from, even though he objected to it. Do you understand what it is that you have been charged with and what it is that you have pleaded guilty to?
"A. Yes.

"Q.   Have any threats or promises been made to get you to plead guilty to this offense?

"A.   No.

"Q.   Do you understand that your plea of guilty could subject you to imprisonment in this case?

"A.   Yes.

"Q.   You have entered your plea of your own free will?

"A.   Yes."

Later in the examination the defendant recited the details of the offense. He admitted that he displayed a gun and demanded the victim's money but was frustrated when the complainant, a cabdriver, succeeded in driving off without him.

A count of aggravated assault was then dismissed. The hearing was continued until October 28 in order to permit the probation office to furnish the court with a current report. On the day of sentencing counsel urged the court to limit the sentence to 5 years which the court refused to do, commenting that it was influenced to some extent by the fact defendant would have shot another cabdriver during the attempted holdup but for the fact his gun jammed. Defendant was then sentenced according to law.

In February 1966 the defendant petitioned the trial court for an order vacating the conviction and granting him leave to withdraw the plea of guilty and enter a plea of not guilty. The sentencing court conducted an extensive hearing at which defendant testified that the reason he had written the letter to the court on October 22 was because he wished to plead not guilty. He further testified that this antagonized his attorneys who advised him they would ask for a limitation of sentence only if he pled guilty. In addition, he claimed they refused to interrogate prospective witnesses. Defendant construed a statement made by the court on October 22, "Well, it may well be that he will determine that he wishes to represent himself," as limiting the defendant to the alternative of retaining Mr. Green and pleading guilty, or going to trial without an attorney. He further asserted that Green advised him if defendant pled not guilty Green would no longer represent defendant and defendant might be given a longer sentence. He concluded by stating that he agreed to plead guilty only after being told that the second count would be dropped and that his attorney would ask that the sentence on the first count be limited.

The trial court took the matter under advisement and on February 14, 1966, entered an order finding, among other things, that defendant's plea of guilty was made with full knowledge and understanding of his rights, was voluntary and without reservation. Because the defendant had admitted his

guilt at the presentence examination and had not repudiated that admission, the court declined to exercise its discretionary right to vacate the judgment and permit the plea of guilty to be withdrawn.

The only issue before us is whether the trial court abused its discretion by failing to give adequate attention to the letter defendant submitted on October 22. He argues that it was the court's duty before accepting a plea of guilty to explore thoroughly and investigate the claims made by defendant in that letter.

On appeal defendant relies for reversal on State v. Olson, 270 Minn. 329, 133 N. W. (2d) 489, and State v. Jones, 267 Minn. 421, 127 N. W. (2d) 153.

In the Jones case we held (267 Minn. 427, 127 N. W. [2d] 157):

"It is well recognized that a plea of guilty, which is a confession in open court, should be received with caution. This is particularly true as it applies to the graver felonies. The plea should not be entered where it is made by one who has not been advised of the nature and elements of the offense charged; nor should the plea be induced by misapprehension or ignorance. No plea should be accepted where it appears doubtful that it is not made intelligently and understandingly."

We reversed the conviction in the Olson case because the defendant at the very moment of sentencing persisted in his claim that he did not commit the acts constituting the crime to which he was pleading guilty. In the instant case before accepting a plea, the court made certain defendant was advised of the nature and elements of the offense, and that defendant's disclosure of his participation in the robbery was entirely consistent with the crime charged. In determining whether defendant was coerced, the trial court had before it an affidavit of one of the two public defenders who first represented defendant and one executed by Mr. Green, in which they categorically denied informing him that he was obliged to enter a plea of guilty. The affidavits revealed that counsel had suggested defendant consider a plea of guilty to one charge in consideration of a dismissal of the other, advising defendant that the evidence against him made a conviction probable.

We are of the opinion that the evidence amply sustained the court's finding that defendant's plea of guilty was voluntarily entered. Since there is no claim by defendant that he is innocent, and his own admissions at the presentence interrogation support the testimony of witnesses who appeared at the preliminary hearing, the trial court did not abuse its discretion in refusing to vacate the conviction to allow defendant to stand trial. The order is therefore affirmed.

Affirmed.